UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARIUS LAMONT WILLIS, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:05CV02365 ERW |
| ) | |
| BARNES-JEWISH HOSPITAL, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment [doc. #25].

## I. PROCEDURAL HISTORY

Plaintiff Darius Lamont Willis filed suit against Defendant Barnes-Jewish Hospital on December 20, 2005, alleging that he was discriminated against based on his sex and his alleged disability. The case was referred to Alternative Dispute Resolution (ADR), but no ADR conference was held. On October 27, 2006, Defendant filed the pending Motion for Summary Judgment and memorandum in support. Plaintiff did not file a response to this motion.

## II. FACTUAL BACKGROUND[1]

Plaintiff was hired by Defendant on February 28, 2005, as a part-time food service worker. On August 31, 2005, there was an incident in the break room in which the Plaintiff allegedly made

---

[1] The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Material Facts. Although the Court will view all evidence in a light most favorable to the Plaintiff, the Plaintiff has failed to file any response to Defendant's motion and therefore the Court will use the facts as presented by the Defendant.

1

threatening and disparaging comments about his supervisor, Lena Washington. Specifically, that the Plaintiff threatened to kill Ms. Washington. Plaintiff disputes having made these statements. Following this incident, two of the Plaintiff's co-workers reported the incident to Ms. Washington, who in turn reported the incident to her supervisors, Marsha Flowers and Donna Paladin, the Patient Service Manager and the director of Food and Nutrition at Barnes-Jewish Hospital, respectively. After learning of the alleged incident, the Defendant conducted an investigation, and concluded that the Plaintiff had made the threatening and disparaging statements and subsequently terminated Plaintiff's employment. During the investigation the Defendant obtained written statements from several employees, who were in the break room during the incident, stating that the Plaintiff had made threatening and disparaging comments against Ms. Washington.

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that

might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

**IV. DISCUSSION**[2]

Defendant argues that Plaintiff has failed to provide sufficient evidence to support a claim of sex discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, or to support a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102 *et seq.* The Defendant asserts that in order to survive a motion for summary judgment under Title VII, the Plaintiff must present evidence to show that he was discriminated against because of his sex. *Def. Memo. in Support of Def. Mot. for Sum. Judg.*, 4. Defendant argues that Plaintiff has failed to meet his burden of establishing a prima facie case of discrimination, or in the alternative, even if Plaintiff has met his burden of establishing a prima facie case, the Plaintiff has failed to present evidence that the Defendant's proffered reason for Plaintiff's termination was pretextual. *Id.* at 6. The Defendant similarly argues that Plaintiff has failed to make a prima facie case under the ADA. *Id.* at 8. Specifically, it argues that the Plaintiff has not presented evidence of a disability within the definition, nor has he shown that his adverse employment action was the result of his disability. *Id.* at 9-11. The Court will address each of the Defendant's arguments.

**A. Sex Discrimination**

The Supreme Court in *McDonnell Douglas Corp. v. Green*, set forth the burden-shifting approach which is used in analyzing claims of sex discrimination under Title VII. 411 U.S. 792, 802 (1973). Under this approach the plaintiff has the initial burden of establishing a prima facie

---

[2]The Plaintiff alleges a violation under Title VII of the United States Code, to the extent Plaintiff's complaint also alleges a violation of the Missouri Human Rights Act (MHRA), the Court uses the same analysis in addressing both claims. *See Evans v. Siegel-Robert, Inc.*, 139 F.Supp.2d 1120, 1124 (E.D. Mo. 2001) ("Claims of race discrimination under Title VII, the Missouri Human Rights Act, and 42 U.S.C. § 1981 are all determined using the same analysis."); *see also Liljedahl v. Ryder Student Transp. Services Inc.*, 341 F.3d 836, 841 (8th Cir. 2003) ("Claims arising under the MHRA are analyzed using the same standard applied to ADA claims." (internal citation omitted)); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1055 (8th Cir. 1997).

case of discrimination, the burden then shifts to the employer to articulate a nondiscriminatory reason for the employment action, which if accomplished, the plaintiff must show is pretextual. *Id*. at 80-804; *see also Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005). A "presumption of discrimination is created when the plaintiff meets [his] burden of establishing a prima facie case of employment discrimination." *Rodgers*, 417 F.3d at 850. The Eighth Circuit further emphasizes that a "minimal evidentiary showing will satisfy this burden of production." *Id.* The burden then shifts to the employer, and if "the employer meets its burden, 'the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination.'" *Id.* (quoting *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005)).

### 1. Plaintiff's Prima Facie Case

In order to establish a prima facie case the Plaintiff must provide evidence that: "(1) [he] is a member of a protected group; (2) [he] was qualified for [his] position; (3) [he] was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination." *Rodgers*, 417 F.3d at 850. The first three elements of the prima facie case are clearly present, as the Plaintiff is a male, which is a protected group, he was qualified for his job as a sanitation employee, and he was discharged from that position. The Defendant does not refute these three elements. The remaining question is whether the discharge occurred under circumstances that give rise to an inference of discrimination. The Plaintiff contends that he was treated differently than a similarly situated female employee, who engaged in conduct similar to that the Plaintiff allegedly engaged in, but who was not discharged.

The Eighth Circuit discussed in detail what is necessary to satisfy the Plaintiff's initial burden with regards to a disparate treatment case. *Rodgers*, 417 F.3d at 852. The Eighth Circuit

5

emphasized that the threshold at the prima facie case stage is low, and that "the burden of establishing a prima facie case of disparate impact is not onerous." *Id.* (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). To show a disparate impact, the Plaintiff must establish that a similarly situated employee was treated more favorably than he was. In a case factually similar to the case at bar the Eighth Circuit laid out the criteria for a prima facie showing of a similarly situated employee. *Id.* Under this low standard, all the Plaintiff must do is show that he and the other employee were "involved in or accused of the same or similar conduct and were disciplined in different ways." *Id*. (Internal quotation omitted); *see also Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994) ("In determining whether employees are similarly situated for purposes of establishing a prima facie case we consider whether the employees are involved in or accused fo the same or similar conduct and are disciplined in different ways."). This Court believes that the Plaintiff has satisfied this low standard. The Plaintiff testified that Ms. Clark was involved in an incident with her supervisor, in which she acted in a disrespectful manner, but did not receive any discipline, and continued to be employed by the Defendant. The Defendant argues that Ms. Clark's situation was not similar because it involved a different degree of severity, that Plaintiff threatened to kill his supervisor, whereas Ms. Clark only refused to comply with a request to perform a job task. However, the conduct does not have to be the same, only similar, and as this is a motion for summary judgment, the Plaintiff must only show there is a material issue of fact as to the initial burden. The Plaintiff has satisfied this standard, both individuals made inappropriate comments to their supervisors, the Plaintiff was discharged, Ms. Clark was not.

   **2. Non-Discriminatory Reason**

Once the Plaintiff has provided evidence of a prima facie case, the burden then shifts to the employer to show a nondiscriminatory reason for his termination. *McDonnell Douglas Corp.*, 411 U.S. at 803. The employer does not have the burden of persuasion on the question of a nondiscriminatory reason, but rather only the burden of production. *Rodgers*, 417 F.3d at 853. Specifically the Eighth Circuit held that "the burden. . .is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Id.* (citing *Floyd v. State of MO Dept. of Soc. Servs.*, 188 F.3d 932, 936 (8th Cir. 1999)). In the case at bar the Defendant testified that the Plaintiff was terminated because he made threatening and disparaging comments towards his immediate supervisor, Ms. Washington. The Defendant further testified that the Plaintiff's sex and learning disability had no impact on its decision to terminate the Plaintiff. The Defendant has satisfied its burden of production to show a legitimate, nondiscriminatory reason for terminating the Plaintiff.

### 3. Pretext

Once the employer has met its burden of production, the burden shifts back to the plaintiff to show that the nondiscriminatory reason offered by the employer, is pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 804. The Plaintiff has the ultimate burden "to produce evidence sufficient to create a genuine issue of material fact regarding whether [the employer's] proffered nondiscriminatory reason is a pretext for discrimination." *Rodgers*, 417 F.3d at 853. Evidence of disparate treatment may be used to support a claim of pretext, however at this point in the analysis there is a greater burden on the Plaintiff to show that " he and the employees outside of [his] protected group were similarly situated in all relevant respects." *Id*. *See also Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994). Without such evidence, summary judgment in favor of the Defendant is appropriate. *Harvey*, 38 F.3d at 972.

The question that is raised by the evidence in the case at bar, is whether the conduct stated by the Defendant as the reason for the Plaintiff's termination was of comparable seriousness to the conduct of Ms. Clark, an employee not within the protected group. *Rodgers*, 417 F.3d at 853. In this case, the Plaintiff alleges that Ms. Clark's actions in talking back to her supervisor and refusing to complete a task assigned to her, was comparable to the disparaging and threatening comments allegedly made by the Plaintiff. The Defendant had statements from three employees that the Plaintiff repeatedly threatened to kill Ms. Washington. The only evidence that the Plaintiff has presented is his own testimony that Ms. Clark similarly had a confrontation with her supervisor. As was the court's conclusion in *Rodgers*, this Court concludes that the action for which Ms. Clark was disciplined was not of comparable seriousness as the statements made by the Plaintiff. There is no evidence that Ms. Clark made any statements threatening violence against her direct supervisor. Furthermore, the Defendant has provided affidavits of Donna Paladin and Marsha Flowers, who both testified that the reason for the Plaintiff's termination was his threatening and disparaging comments about Ms. Washington. This Court is persuaded that there is no issue of material fact on the question of pretext, and therefore the Defendant is entitled to judgment as a matter of law on Plaintiff's claim of sex discrimination.

**B. Disability Discrimination**

The Plaintiff also alleges that the Defendant terminated the Plaintiff's employment because of his disability, namely dyslexia. The ADA prohibits discrimination "against a qualified individual with a disability because of the disability. . .." 42 U.S.C. § 12112(a). Similarly to the approach used for a claim of sex discrimination, the burden shifting analysis articulated in *McDonnell Douglas Corp.*, is also used in the context of disability discrimination. 41 U.S. at 792; *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 959 (8th Cir. 2000) ("[D]iscrimination claims are analyzed

8

under the familiar burden-shifting framework of *McDonnell Douglas Corp. . ..*"). First, the Plaintiff must establish a prima facie case of discrimination, then the burden shifts to the employer to articulate a nondiscriminatory reason for terminating the Plaintiff, and if it succeeds then the burden shifts back to the Plaintiff to show that the reason put forth is pretextual. *Taylor*, 214 F.3d at 959. The Court will use this approach in determining whether there is a genuine issue of material fact sufficient for Plaintiff to survive Defendant's motion for summary judgment.

In order to present a prima facie case under the ADA, the Plaintiff must show that (1) he is disabled within the meaning of the ADA, (2) that he was qualified to perform the essential functions of the job, and (3) that he was terminated because of his disability. *Taylor*, 214 F.3d at 959-960; *see also Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th cir. 1999). A disability is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2)(A)-(C). The Plaintiff testified that he suffers from dyslexia, which effects his ability to read, write, and comprehend written material. First, the Court must determine whether reading and writing are major life activities, and second, the Court must determine whether the Plaintiff was substantially limited in those activities.

The Code of Federal Regulations gives a non-exhaustive list of major life activities; "functions such as caring for oneself, performing manual tasks, walking, seeking, hearing, speaking, breathing, learning and working." 28 C.F.R. § 1630.2(i); *see Bragdon v. Abbott*, 524 U.S. 624 (1998) ("As the use of the term 'such as' confirms, the list is illustrative, not exhaustive."). The EEOC's interpretations of the ADA define a major life activity as "those basic activities that the average person in the general population can perform with little or no

9

difficultly." *Walsted, Woodbury County, IA*, 113 F.Supp.2d 1318, 1328 (N.D. Iowa, 2000) Both reading and writing are major life activities, as these are basic activities that the average person can perform with little or no difficulty. *Id.* at 1329; *see also Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 627 (6th Cir. 2000) (Recognizing reading, writing and working as major life activities.).

The Court must now determine if the Plaintiff was substantially limited in the major life activities of reading and writing. The Regulations define substantially limits as "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). The regulations also list a number of factors that should be considered in making this determination: "(1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact." *Walsted*, 113 F.Supp.2d at 1327 (citing 29 C.F.R. § 1630.2(h)).

The Plaintiff testified that his dyslexia causes him to have difficulty reading and writing, that he required the assistance of his job coach in completing the application for the job at Barnes-Jewish Hospital, and that his writing has numerous spelling and grammatical errors. Furthermore, the Plaintiff testified that when he was asked to compose a statement addressing the incident resulting in his discharge, he had trouble writing it in a manner that could be understood. However, the Plaintiff further testified that he was able to read the newspaper, pay his bills, and complete a job application without assistance. In addition he graduated from high school and is attending culinary school at Forest Park Community College. It is clear from this evidence that

10

the Plaintiff is not unable to read or write, and therefore the first definition in the regulation is inapplicable. 29 C.F.R. § 1630.2(j)(1)(i). The alternative method of finding a disability is if the Plaintiff is "significantly restricted" in his ability to read and write. *Id.* at § 1630.2(j)(1)(ii). In *Walsted*, the district court concluded that there was a genuine issue of fact whether the plaintiff was substantially limited in the major life activity of reading, when the plaintiff had provided evidence that she could only read and write her own name, address, and a few simple words. 113 F.Supp.2d at 1327. In the present case, the Plaintiff's testimony does not show such a limited ability to read and write, rather his testimony supports a finding that he is literate. Merely being below average at performing a major life activity is insufficient to establish a disability. *See Weisberg v. Riverside Tp. Bd. of Educ.*, 180 Fed.Appx. 357, 358-59 (3rd Cir. 2006)("[T]he Court reasoned that merely being 'below average' could not entitle one to the ADA's protections. . ..We affirm essentially for the reasons given by the District Court."). Although the Plaintiff has provided some testimony to support the impact his learning disability has on the major life activities of reading and writing, the Court is not persuaded that there is a genuine issue of material fact. The Plaintiff has testified that he is able to read and write, but needs some assistance, not a severe impairment. 29 C.F.R. § 1630.2(h). Furthermore, although the impairment may be long term, the Plaintiff has received assistance with his reading and writing, which suggests that it may improve in the future. *Id*. The Plaintiff may be below average in the life activities of reading and writing, however, his testimony that he is able to attend college classes, read the newspaper, pay the bills, and apply for jobs, supports the Court's finding that the Plaintiff is not disabled within the meaning of the ADA.

In the alternative, the Plaintiff provided testimony that the Defendant regarded the Plaintiff as having such an impairment. 42 U.S.C. § 12102(2)(A)-(C). In support of this argument the

Plaintiff testified that the statement provided by Shanta Henderson which stated that there is "something wrong with him," and "I don't know if it's because of his medical/mental condition," *Def. Mot. for Sum. Judg.*, Ex. E, shows that the Defendant believed that the Plaintiff had a disability. The Plaintiff also pointed to his own written statement regarding the incident involving Ms. Washington, to show that the poor spelling and grammar contained in the statement caused the hospital to believe he had a disability.[3] The Defendant rebuts this testimony by pointing to affidavits by Donna Paladin and Marsha Flowers, which testify that they did not know that Plaintiff had or claimed to have a disability. *Def. Mot. for Sum. Judg.*, Ex. B & G ("In fact, Mr. Willis never informed me that he believed he had a disability and I did not know that he had or even claimed to have, one."). Additionally, the Plaintiff testified that he never informed Donna Paladin or Marsha Flowers that he had a disability.

The regulations define "regarded as having such an impairment" to mean: "(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation. . .." 29 C.F.R. § 1630.2(l)(l). The Eighth Circuit in *Taylor*, held that knowing an employee may be having medical difficulties and expressing concern. . .does not amount to treating an employee as if she has a permanent disability. . .. 214 F.3d at 961. Additionally, "knowledge of behaviors that could be associated with an impairment does not show that [the defendant] treated [the plaintiff] as if she were disabled." *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998). The only evidence provided by the Plaintiff is that the Defendant knew that the Plaintiff had difficulty writing, and that one employee thought that he had a mental or medical problem that may have caused his outburst

---

[3]The Court has not been provided a copy of the statement, but will assume for purposes of this motion that it does contain grammatical and spelling errors.

12

against Ms. Washington.  The Defendant's knowledge of these behaviors and characteristics are not sufficient to show that the Defendant regarded the Plaintiff as having a disability.  Furthermore, even if the Defendant did know, or regard, the Plaintiff as having dyslexia, there is no evidence that they regarded him as being substantially limited in a major life activity as a result of his dyslexia.  *See Land v. Baptist Medical Center*, 164 F.3d 423, 425 (8th Cir. 1999).  The Plaintiff has not provided sufficient evidence to support a finding that the Defendant regarded the Plaintiff as suffering from dyslexia and that this substantially limited the major life activities of reading and writing.  The evidence could only support a finding that the Defendant knew the Plaintiff had difficulty with written communication, this is insufficient as a matter of law to show the Plaintiff was regarded as having a disability.

Having failed to show either that he suffered from a disability or was regarded as suffering from a disability, the Plaintiff is unable to meet his burden to establish a prima facie case of discrimination.  Furthermore, even were the Plaintiff able to show that he was disabled within the meaning of the ADA, which this Court concluded he cannot, the Defendant has provided a legitimate nondiscriminatory reason for the Plaintiff's discharge.  The same analysis is used as under Title VII; the burden shifts from the Defendant to the Plaintiff to show that the legitimate nondiscriminatory reason is pretextual.  The Plaintiff has not provided sufficient evidence to rebut the Defendant's proffered reason, and therefore cannot succeed on his claim under the ADA.

## V. CONCLUSION

The Plaintiff alleged that he was terminated because of his sex and because of his disability. However, this Court finds that the Plaintiff has failed to present sufficient evidence of either sex discrimination under Title VII, or disability discrimination under the ADA, to survive a motion for summary judgment. Furthermore, the Plaintiff has not presented sufficient evidence to rebut the Defendant's evidence that they terminated the Plaintiff because of the threatening and disparaging comments he made towards his supervisor, Ms. Washington. Therefore, this Court grants Defendant's Motion for Summary Judgment.
Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. #25] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants Motion to Extend Pretrial Compliance Deadline and Vacate Trial Date [doc. #31] is **DENIED** as Moot.

Dated this <u>9th</u> Day of <u>January</u>, 2007.

```
_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE
```